# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KHRISTOPHER J. COBB, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00265 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.   Introduction

Plaintiff Khristopher J. Cobb[2] brings this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") childhood disability benefits.  Plaintiff's mother, Karla Cobb, filed the application on his behalf on October 31, 2011, alleging that he has been disabled since August 3, 1997.[3]  (*PageID##* 213-18).

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Plaintiff's counsel originally filed suit in the name of the minor. The Court's local rules discourage the use of the names of minor children in filings with the Court. S.D. Ohio Civ. P. 26.2(a). For docketing continuity, the caption of this case will remain the same.

[3]Under the controlling regulations, a Plaintiff cannot receive benefits for any period prior to the filing of his application for SSI benefits. 20 C.F.R. § 416.335.  SSI benefits cannot be awarded retroactively. SSR 83-20, 1983 WL 31249, at *1, *7 (1983).

Plaintiff claims to be disabled by reason of a learning disability, Attention Deficit Hyperactivity Disorder ("ADHD"), and asthma. (*PageID#* 223). After his application was denied during the initial administrative proceedings, Plaintiff was provided a video hearing before Administrative Law Judge ("ALJ") Barbara J. Welsch. On April 30, 2013, ALJ Welsch issued a decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act, and was therefore not eligible for SSI. (*PageID##* 59-74). The ALJ's decision and the resulting denial of benefits became the final decision of the Social Security Administration.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply, (Doc. #11), the administrative record (Doc. # 6), and the record as a whole.

## II.   Background

### A.   Plaintiff's Profile and Testimony

Plaintiff was born in 1997 and was 15 years old at the time of the ALJ's decision. (*PageID#* 64). At the time of the administrative hearing, Plaintiff was attending high school and in the 10th grade. (*PageID#* 82).

Plaintiff's mother, Karla Cobb, testified at the hearing that Plaintiff is the oldest of her 4 children. (*PageID#* 82). Ms. Cobb testified that she filed for disability benefits for her son because of Plaintiff's ADHD and learning disability. (*PageID#* 83). Plaintiff has been on an individualized education plan ("IEP") since 2nd grade. (*Id.*). Ms. Cobb testified that Plaintiff has problems with school due to his reading. Ms. Cobb stated that

Plaintiff is reading on a 1st grade level, which hinders him in all other subjects.  (*Id.*). Plaintiff goes to a resource room at school for every subject except math.  (*PageID##* 87-89).  Plaintiff takes medications for his ADHD and has been on medications for "the last few years."  (*PageID#* 84).  Ms. Cobb has not noticed any substantial improvement in her son's capabilities in school as a result of the ADHD medication.  (*Id.*).

Ms. Cobb testified that Plaintiff "reads a little [at home] until he gets frustrated." (*Id.*).  She described his reading capabilities as, "like a five-year-old."  (*Id.*).  Ms. Cobb noted that Plaintiff "doesn't write well.  I can't understand what he writes, he has to tell me what it is he's wrote."  (*PageID##* 84-85).

Ms. Cobb also testified that Plaintiff has trouble maintaining relationships with his younger brothers and sisters because they pick on him for his bad spelling when he is sending text messages.  (*PageID##* 85-86).  Plaintiff experiences side effects from his ADHD medication and complains of stomach pain.  Plaintiff has excellent school attendance and is active in his high school in football, track, and wrestling.  (*PageID#* 86).  Ms. Cobb does not believe that Plaintiff can complete a basic job application. (*PageID#* 87).

Ms. Cobb stated that Plaintiff tries to help with chores but only completes half of them.  (*PageID##* 87-88).  Ms. Cobb testified that Plaintiff "just can't sit still."  (*PageID#* 88).

Ms. Cobb testified that she was receiving calls from teachers about Plaintiff not

being able to do his work, not focusing, getting up, going to the water fountain, and just wandering the halls of school.  (*PageID#* 89).  Ms. Cobb testified that Plaintiff does not turn in his homework because he does not understand it.  (*PageID#* 90).

Plaintiff testified that in the resource room he receives help if he asks for it.  (*PageID#* 92).  Plaintiff stated that he had not been turning in homework since the 8th grade.  (*Id.*).  Plaintiff did not think the medications that he was using were helping him with his school work very much.  (*PageID#* 93).

Plaintiff testified that he taps a pen because he gets bored, confused, and frustrated.  Plaintiff acknowledged that he walks around during the middle of class because he gets tired of sitting in the seat and working.  (*PageID#* 94).  When asked about mistakes that he was making in school, Plaintiff stated that he sometimes does not understand what he was being asked to do or he gets confused and "I just don't listen anymore."  (*PageID##* 94-95).

When examined by the ALJ, Plaintiff testified that he had a computer that he used occasionally for Facebook, and that he has a cell phone that he uses to text his friends.  (*PageID##* 95-96).  Plaintiff also plays video games with his friends and his brother.  (*PageID#* 97).

  **B.** **Medical and Educational Evidence**

The administrative record contains many medical and educational records, as well as opinions from Plaintiff's treating and non-treating sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the

4

entire administrative record and because the ALJ, Plaintiff's counsel, and the Commissioner have accurately summarized the relevant records concerning Plaintiff's impairments with citations to specific evidence.

### III. "Disability" Defined and the ALJ's Decision

#### A. Legal Framework for Disability Determinations

To qualify for SSI, Plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  Eligibility is dependent upon disability, income, and other financial resources.  *Id.*  An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P., 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).  An impairment which meets or medically equals the severity of a set of criteria for an impairment in the Listing, or which functionally equals a listed impairment, causes marked and severe functional limitations.  20 C.F.R. § 416.924(d).

In determining whether a child's impairment(s) functionally equal the Listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment.  20 C.F.R. § 416.926a(a)(l)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation is one that is "more than moderate" but "less

than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(l). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

In determining functional equivalence, the ALJ must consider the "whole child." Social Security Ruling 09-1p, 2009 SSR LEXIS 1, 2009 WL 396031. The "whole child" approach to functional equivalence requires the ALJ to consider the following questions:

> 1. *How does the child function?* "Functioning" refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments. We consider:
>
> • What activities the child is able to perform,
>
> • What activities the child is not able to perform,
>
> • Which of the child's activities are limited or restricted,
>
> • Where the child has difficulty with activities – at home, in childcare, at school, or in the community,
>
> • Whether the child has difficulty independently initiating, sustaining, or completing activities,

> • The kind of help, and how much help the child needs to do activities, and how often the child needs it, and
>
> • Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

2. *Which domains are involved in performing the activities?* We assign each activity to any and all of the domains involved in performing it.  Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.

3. *Could the child's medically determinable impairment(s) account for limitations in the child's activities?* If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.

4. *To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain?* We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the determination of the degree of limitation.

*Id.* (internal citations omitted).  Importantly, SSR 09-01p goes on to provide more detail about the technique for determining functional equivalence, but emphasizes:

> [W]e do not require our adjudicators to discuss all of [these] considerations [] in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.

*Id.* at *9.

### B. **ALJ Welsch's Findings**

ALJ Welsch found that Plaintiff has ADHD, a learning disorder – reading, and asthma, which are "severe" within the meaning of 20 C.F.R. §416.924(c).  (*PageID#* 64). However, the ALJ found that Plaintiff's impairments or combination of impairments does

8

not meet or medically equal the severity of any impairments listed in Part B of Appendix 1 to Subpart P, 20 C.F.R. Part 404. (*Id.*). In the six domains used to determine a child's functional equivalence, the ALJ found that Plaintiff had no limitation in the domains of moving about and manipulating objects; caring for yourself; and health and physical well-being. (*PageID##* 72-74). Plaintiff was found to have "less than marked" limitation in the domains of acquiring and using information; attending and completing tasks; and interacting and relating with others. (*PageID##* 70-72). The ALJ determined that Plaintiff did not have "marked" or "extreme" limitations in any area of functioning. Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (*PageID#* 74).

**IV.    Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as

adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.      Discussion**

As noted above, the ALJ evaluated Plaintiff's claim using the three-step sequential process for claims involving childhood SSI, as set forth in 20 C.F.R. § 416.924. After finding that Plaintiff had not engaged in any substantial gainful activity at any relevant time (*PageID#* 64), the ALJ found at the second step that Plaintiff suffered from the severe impairments of ADHD, a learning disorder – reading, and asthma. (*Id.*). Based on her review and consideration of the entire record, the ALJ found at the third step that Plaintiff did not have an impairment or combination of impairments that met,

medically equaled, or was functionally equivalent to any listing (*PageID#* 67). Accordingly, she concluded that Plaintiff was not entitled to receive SSI benefits. (*PageID#* 74).

 Plaintiff does not argue that Plaintiff has any limitations in the domains of interacting and relating with others, moving and manipulating objects, caring for himself, or health and physical well-being.  These four domains, therefore, need not be addressed. Plaintiff argues that the ALJ erred when she failed to find marked limitations in two functional domains: 1) acquiring and using information, and 2) attending and completing tasks.  (Docs. ## 8 and 11).  A review of the record, however, indicates the ALJ did not err.

 Ty Payne, Ph.D., who examined Plaintiff on behalf of the state agency, concluded that Plaintiff was not markedly limited in any of the domains.  (*PageID##* 354-60).  Dr. Payne opined that in the area of "Acquiring and Using Information," Plaintiff had the intellect and communication skills to enable him to learn age appropriate information. While he did have a disorder in reading that would hinder him as far as word decoding and comprehension, "he did well in this one-to-one setting and was not easily distracted." (*PageID#* 358).  In the domain of "Attending and Completing Tasks," Dr. Payne found that Plaintiff was not easily distracted, that even when distracted "he could be redirected without much difficulty," and his activity level was appropriate.  (*Id.*).

 Dr. Payne recognized that Plaintiff was "independent of his mother," "participated

11

willingly in the conversation," "related well," and "was outgoing and appeared to be interested." Plaintiff had no difficulty with self-care, he was a multi-sport athlete at school, and had euthymic mood and appropriate affect. Dr. Payne reported that Plaintiff's pace was average, his persistence was good, concentration was acceptable, and he "stayed with the tasks until they were finished or time ran out." (*PageID#* 357).

Twice in 2012 Plaintiff's childhood disability claim and medical record were reviewed, analyzed, and his limitations evaluated in each of the six functional domains. (*PageID##* 105-06, 116-18). In March, reviewing psychologist Cynthia Waggoner, Psy.D., considered Plaintiff's ADHD under Listing 112.11. (*PageID#* 105). She concluded that the educational and medical record demonstrated functional limitations in the domains of acquiring and using information and attending and completing tasks. (*PageID##* 105-06). Dr. Waggoner noted that Plaintiff could "produce a legible signature" and "produce fairly legible print when he takes his time." (*PageID#* 106). Dr. Waggoner found Plaintiff demonstrated fair keyboarding skills and that "[c]hallenges with spelling and reading appear to be the most limiting factors in terms of speed and legibility with written expression." (*Id.*). Dr. Waggoner also noted that Plaintiff is a hands-on learner and did better with verbal, rather than written, responses. (*Id.*). As to each of these domains, this state agency psychologist assessed such impairment to be of "less than marked" severity and, therefore, concluded that Plaintiff's condition did not

functionally equal a listed impairment.[4] A second state agency psychologist, Tonnie Hoyle, Psy.D, reviewed the updated medical record in August and, for the same reasons as Dr. Waggoner, came to the same non-disability conclusion. (*PageID##* 116-18). A review of the record therefore indicates the ALJ's finding is consistent with the findings of Drs. Waggoner and Hoyle. (*PageID##* 71-72). As psychological consultants, Drs. Waggoner and Hoyle are considered "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." *See* 20 C.F.R. § 416.927(e)(2)(i); SSR 96-6p. Moreover, their findings are uncontradicted.

In contrast to the ALJ's findings, Plaintiff argues that because of his IEP, the report from Huntington Learning Center, and "the deficits recognized by psychologist Skillings," he clearly has a marked limitation in the domains of acquiring and using information, and attending and completing tasks. However, the medical and education evidence presented does not support these claims. Moreover, the fact that Plaintiff had an IEP based upon a learning disability is not the same as proving that he met or equaled the requisite Listing. An IEP dated November 18, 2011, from Plaintiff's freshman year in high school, shows Plaintiff had many friends, his language and articulation were easily understood, and his use of vocabulary is similar to his peers. He "listens well and takes time to process what is expected or asked of him." (*PageID#* 263). The IEP also reported that Plaintiff's most "recent evaluation indicate[d] that he possesses overall

---

[4] "By 'functionally equal the listings,' [the agency] mean[s] that [the claimant's] impairment(s) must be of listing level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. 416.926a(a).

cognitive ability in the average range and skills comparable to other students his age," but with slower processing speed.  Plaintiff's "academic skills were similar to other students his age in math but were well below average in reading and writing."  (*PageID#* 286).  Testing showed that his "writing difficulties are more related to challenges with spelling and reading than with fine motor or visual perceptual skills."  (*PageID#* 282).  Plaintiff's goals were to learn basic reading skills which are at a 1st or 2nd grade level but those skills do not get worked on in an 8th to 9th grade classroom.  (*PageID#* 236).

      In addition to relying upon school records, Plaintiff contends the ALJ erred by failing to adequately credit the report from Karla Young, Executive Director of the Huntington Learning Center.  Ms Young reported on April 15, 2013, that Plaintiff was "'extremely limited' in his ability to acquire and use written or numerical information."  (*PageID#* 334).  Her opinion, however, was conclusory and included with only one page of more detailed testing results.  It did not comment on Plaintiff's effort, reliability, or the validity of the test.  (*PageID##* 334-36).  In addition, the ALJ specifically discussed the Huntington Learning Center report, giving the opinion "little weight."  The ALJ found that the marked and extreme limitations are not supported by the record.  (*PageID#* 65).  The ALJ therefore assigned "more weight" to school records and results from examinations by Drs. Payne and Skillings.  The ALJ found that the school records and examinations are consistent with each other, as well as Plaintiff's functioning as described in the record by his teachers.  (*Id.*).  In addition, since Ms. Young is not a

14

doctor or psychologist, her opinion would not have been entitled to controlling weight. *See* SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 (July 2, 1996).

Assessment of the functional domain of attending and completing tasks may be particularly relevant for an individual with ADHD. Although Plaintiff relies on Dr. Skillings' report to support his assertion that his limitations were "marked," Dr. Skillings' report does not entirely support such a conclusion. She evaluated Plaintiff in June 2012 to help "clarify diagnostic issues." (*PageID#* 397). During this evaluation, Ms. Cobb said there was no plan for Plaintiff to work on his reading during the summer break. (*PageID#* 398). Dr. Skillings noted that Plaintiff had "intact social skills and seemed comfortable conversing with me. He did not acknowledge any issues other than his difficulties with reading." (*Id.*). Plaintiff was "pleasant and polite," with a high level of "distractibility and hyperactivity." (*Id.*). Dr. Skillings reported that she "agree[d] with Dr. Payne's conclusion that Khristopher has adequate intellect and communication skills to enable him to learn age appropriate information." (*PageID#* 402). Dr. Skillings believed that Plaintiff would struggle to keep up in school because, while his cognitive scores were technically average, he was over a year behind age level expectations. (*Id.*). His responses on testing show he is prone to "[l]ying, limit testing, and attempts to shift responsibility for his poor choices onto others." (*Id.*). She noted that Plaintiff was "not engaged in a formal reading program this summer," which she found "startling." (*PageID#* 404). She "recommended to his mother that, at a bare minimum, some daily reading be required of Khristopher before he is permitted to participate in sports." (*Id.*).

15

Dr. Skillings noted that "Khristopher does have challenges but he also is a very typical child in the sense that he will do what works in terms of getting what he wants in the world. . . . If reading is required to gain access to his beloved sports and/or the opportunity to socialize with friends, Khristopher will probably learn the important skill of compliance." (*PageID#* 405).  Dr. Skillings concluded that despite his mother's complaints that his medicine was not effective, Plaintiff did well on the tasks of Working Memory which would suggest that the medication for ADHD was effective.  (*Id.*). Accordingly, Plaintiff has not provided any evidence that shows that his learning disability or ADHD markedly limits him in any of the domains.

  Plaintiff also argues the ALJ denied him due process when she refused his request to take testimony of Ms. Young, Executive Director of the Huntington Learning Center, via telephone at the hearing.  Plaintiff alleges he requested the testimony of Ms. Young to establish her credentials and identify the particular tests used by Huntington.  (Doc #8, *PageID#* 441).  Plaintiff argues the ALJ had the responsibility to follow HALLEX rules. Plaintiff has failed to provide this Court with any law to support his proposition. "[C]ourts have concluded that failure to follow exact procedures set forth in HALLEX does not require reversal absent a convincing showing of prejudice to the Plaintiff."  *St. Clair v. Astrue*, 2010 U.S. Dist. LEXIS 87731, *21 (N.D. Ohio August 25, 2010); *see also Creech v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 519, 521 (6th Cir. 2014) ("[E]ven district courts that have granted relief for failure to comply with HALLEX have required that the plaintiff demonstrate prejudice from the failure to follow the procedures.").  Here,

16

Plaintiff has not demonstrated that the ALJ's alleged HALLEX violation(s) deprived him of a full or fair administrative hearing or otherwise prejudiced him.  This is particularly so given that Ms. Young would not qualify as a treating source.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. Appx. 496, 506-07 (6th Cir. 2006).  Moreover, an ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary.  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. § 416.197).

For these reasons, Plaintiff's Statement of Errors lacks merit and the ALJ's decision should not be disturbed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

June 9, 2015

                                                        s/Sharon L. Ovington
                                                         Sharon L. Ovington
                                        Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).